[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Kim M. Hauser, in this action seeks a dissolution of her marriage to the defendant, Steven M. Hauser.
This matter was tried as a limited contested matter; issues relating to child custody and visitation were resolved by the agreement of the parties. Financial issues incident to the dissolution were contested.
After a full trial on the contested financial issues, the court, by a preponderance of the credible, relevant, reliable and legally admissibie evidence, and the reasonable, logical and lawful inferences to be drawn therefrom, finds/determines and rules as follows:
Plaintiff, whose name before this marriage was Kim Marie Parisi and the defendant intermarried at Wethersfield, Connecticut on September 21, 1990.
The plaintiff and the defendant have resided continuously in this State for at least twelve months next preceding the date of the complaint.
The parties have one minor child issue of this marriage, namely, Ashley Hauser, born August 28, 1993. No other minor children have been born to the plaintiff wife since the date of the marriage.
Neither the State of Connecticut nor any of its municipalities has CT Page 5948 contributed to the support of the parties or the child.
The marriage has broken down irretrievably.
Plaintiff is now 40 years old; defendant is 44. Both are in apparent good health.
Plaintiff is a high school graduate. Her employment has largely been as a day-care nursery school teacher. Her rate of compensation is presently $8.75 per hour. She works approximately 31 hours per week.
Defendant is a high school graduate and has had some college education. He has been employed by the Hartford Police Department since June 29, 1987. He is now a sergeant.
Defendant now earns in the order of $66,000 per year. In recent years, due to overtime, defendant earned far more. His recent annual earnings were:
 2001 $66,000 2000 82,000 1999 78,000 1998 79,000
According to defendant, the overtime which he had worked in 2000 and the immediately preceding years is no longer available.
The marriage has been seriously troubled for many years. Defendant often was not home when he might have been expected to be home. Some of this was due to the odd work hours and the extensive overtime defendant worked. And, for a time, it was caused by his studying for the sergeant's promotion exam. By and and large, though, defendant was away from the home enjoying recreational pursuits. He played golf. He was in several softball leagues. Incident to the golf and softball, there was much socializing. And, the league softball led to frequent out-of-state trips for tournaments which occasioned much partying. These trips usually lasted two or more days. All the while plaintiff was home alone with the child.
Fidelity on the defendant's part was lacking. He had relationships with other women. In 1995, he contracted an herpes infection. He told plaintiff this infection came from a bathtub at a hotel where he had stayed on one his out-of-state junkets. As a result, normal sexual relations were prevented causing additional tension.
In approximately March 2001, defendant told plaintiff he was seeing CT Page 5949 another woman. Defendant said he no longer loved her (plaintiff).
Defendant dominated the household finances. Plaintiff was given little control. She was kept largely in the dark about the finances.
The parties own a home. By stipulation, the court values it at $243,000. The mortgage debt thereon is, according to their financial affidavits, between $157,000 and $160,000. Their joint equity is over $80,000. In July 1997, the original first mortgage was paid off by a new first mortgage. The latter mortgage is considerably less than the original. According to plaintiff, defendant received an $82,000 inheritance from his mother and used $31,000 thereof in the refinance to reduce the principal balance. There is now a home equity second mortgage on the property. The original amount was $35,000. Defendant received the entire proceeds. However, it appears some was spent on the family home for windows and a patio. Some $15,000 was used to pay down his credit card debts. Some was used to pay his counsel in this case. Defendant did not testify at the trial. The court does not have defendant's account of how the home equity proceeds of $35,000 were applied. Plaintiff's testimony that only the expenditures for the windows and patio inured to her benefit and/or the household was not controverted. There has been no accounting for the entire proceeds.
Income tax refunds were received during the pendency of this action. The refunds, $6,036 for 2000 and $5,460 for 2001, were deposited by defendant in his account. No accounting for the application of these funds was given to the court. Defendant did not testify. There is no testimony or other evidence refuting plaintiff's testimony that defendant alone got the refunds and the benefit thereof.
In July, 1999, defendant purchased a residential building lot in Port Charlotte, Florida in his name alone. He purchased it for $19,000 using funds inherited from his mother. Plaintiff and defendant envisioned this property as a mainstay for their retirement. It is now appraised for close to $60,000. Defendant did not present any evidence of a lower value.
Plaintiff, per her April 23, 2002 financial affidavit, has $3,280 in an account with "Baird."
Defendant, per his April 23, 2002 financial affidavit, has $5,800 in a Hartford Police Federal Credit Union account, $5,100 in a deferred compensation account, and $675 in securities described as "Disney" and "Pro Net Link." The sum of these presently available "cash type" funds is $11,575.
A paycheck memorandum for the pay period ending April 12, 2002 was CT Page 5950 attached to defendant's April 23, 2002 financial affidavit. It shows that $11,841.77 has been deducted from defendant's pay during 2002 for "P Cred Union." As of the week ending April 12, 2002, the weekly deduction was $778.01. Defendant's April 23, 2002 financial affidavit does not show any account with the credit union as an asset. Nor does the financial affidavit show any liability to the credit union. No explanation was given for this. And, the April 12, 2002 paycheck memorandum shows that the required (taxes, union dues, insurance, etc.) deductions and the voluntary deductions in total equaled defendant's gross pay; the result — no paycheck! No explanation has been given for what the court deems a remarkable circumstance.
The paycheck memorandum showed a $20 per week deduction for deferred compensation; $300 had been deducted during 2002.
Defendant has a pension plan with the City of Hartford. The parties agreed on a report prepared by a consulting actuary. The report states:
 "As requested, I have calculated the actuarial present value of Mr. Hauser's pension from the City of Hartford. You provided the following information:
 Date of Birth: June 17, 1957 Date of Hire: June 29, 1987 Date of Marriage: September 21, 1990 Accrued Pension (As of 5/31/01) $2,323.09/mo. at 7/1/07
 "Based on the above, I have estimated that his accrued benefit as of 6/29/02 will be $2,680/mo. beginning 7/1/07; the present value of this pension will be $410,853. I have also estimated (pro-rata based on service) that his benefit on the date of marriage was $565 payable 7/1/07; the then present value of this benefit was $42,904. Therefore, the value as of 6/29/02 of the marital portion of his pension is $367,749.
 "The above present values were calculated using 6.0% interest and the 1983 Individual Annuity Mortality Table. I also assumed annual 2.0% cost of living adjustments after retirement since the city has regularly provided "ad hoc" increases equal to 60% of the CPI increase." Letter from James A. Gobes, Consulting Actuary, dated April 29, 2002, to Steven R. Dembo, Esq. CT Page 5951
The court finds that the marital portion of the pension is $367,749.
Neither party challenged or attacked the accuracy of the other's affidavit.
The court finds the defendant's conduct caused the breakdown of the marriage.
The court has considered all the criteria established by statute, C.G.S. §§ 46b-81, 46b-82 and 46b-84.
Judgment shall enter as follows:
1. Dissolution. The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
2. Child custody. The parties shall share joint legal custody of Ashley. Ashley's primary residence shall be with the plaintiff.
3. Visitation/Parenting access. The defendant father shall have flexible and reasonable rights of visitation. The parties shall share the following holidays/events: (a) Christmas Eve shall be spent with the defendant father, who will pick up and drop the child off to the plaintiff mother after midnight mass; (b) the plaintiff mother shall have the child for Christmas Day; (c) the plaintiff mother shall have the child for Mother's Day; (d) the defendant father shall have the child for Father's Day; (e) Memorial day and Labor Day shall be with the parent who had custody on the preceding weekend; (f) July 4th shall be with the parent who did not have the child on Memorial Day; and (g) Easter, Halloween, Thanksgiving, and New Year's Eve/New Year's Day shall alternate by even/odd years, with the defendant father having the odd years and the plaintiff mother having the even years. Each parent shall be allowed at least two weeks of uninterrupted vacation with the child annually. Notice of such vacation shall be provided to the other parent in writing at least 45 days in advance. An itinerary and phone number shall be provided. Telephone access to the other parent shall be provided.
The defendant father shall have mid-week visitation with the minor child from after school until 8:30 p.m., with the defendant father picking the child up and dropping her off.
The parties shall alternate all school vacations during the school year. CT Page 5952
Each parent shall have the right of first refusal to be with the child before alternate daycare and/or other arrangements are made.
4. Child's health insurance. Defendant shall maintain and pay for health insurance for Ashley.
5. Child support. Defendant shall pay $160 per week child support according to the child support guidelines. Unreimbursed medical expenses for Ashley shall be shared in accordance with the child support guidelines; plaintiff — 39%., defendant — 61%. If there are child (day) care expenses, they shall be shared in accordance with the child support guidelines.
6. Tax exemption. Defendant may claim the income tax exemption for Ashley. This may be modified if plaintiff would be entitled to the exemption under the income tax laws.
7. Life insurance for Ashley. Each party shall maintain $100,000 life insurance unencumbered for the benefit of Ashley until she reaches age twenty-two.
8. UGMA account. This account for Ashley shall remain her sole property. Plaintiff shall be the custodian of this account.
8. Alimony. Defendant shall pay plaintiff $225 per week alimony for six years. Alimony shall cease on the death of either party or the remarriage of plaintiff. The term of the alimony shall not be modifiable.
9. Life insurance. The defendant shall maintain, at his own cost, life insurance payable to the plaintiff in an amount at least equal to the amount of alimony remaining due the plaintiff pursuant to paragraph 8 above.
7. Portland property. Defendant shall immediately transfer all his right title and interest in the marital property known as 24 Victoria Road, Portland, to plaintiff. Defendant shall pay the mortgage payments (first mortgage and second home equity mortgage, including required escrows for insurance and taxes) until September 1, 2002 or until plaintiff sells the property, which ever occurs first.
8. Florida property. Defendant shall quitclaim one-half of all his right title and interest in the Port Charlotte, Florida property to plaintiff by May 31, 2002.
9. Cash transfer. Defendant shall pay plaintiff $9,000 by May 31, 2002. CT Page 5953
10. Baird account. Plaintiff shall retain the "Baird" account funds.
11. Automobiles. Plaintiff shall have ownership of and title to the 1994 Oldsmobile. Defendant shall have ownership of and title to the 1997 Dodge Ram truck. Each party shall execute such documents necessary to effect the above.
12. Defendant's pension. Plaintiff shall be entitled to one-half of the $367,749 marital portion of the pension fund. Defendant shall execute any and all documents which are necessary to effect this award.
13. Personal property. The parties shall divide this property amicably. The court will retain jurisdiction to resolve any disputes about this division.
14. Debts. Each party shall be responsible for the debts shown on their respective financial affidavits.
15. Health insurance. Neither party shall be responsible for providing health insurance for the other. However, if plaintiff desires such insurance if available through defendant's employment, husband shall cooperate in obtaining this insurance for plaintiff but the cost thereof shall be paid solely by plaintiff.
16. Counsel fees. Neither party shall be responsible for the other's counsel incurred in connection with this dissolution action.
Parker, J.